# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| LAWRENCE WINKLES, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. CV408-088 |
| | ) |
| ANTHONY WASHINGTON, and | ) |
| ATTORNEY GENERAL OF THE | ) |
| STATE OF GEORGIA, | ) |
| | ) |
| Respondents. | ) |

## REPORT AND RECOMMENDATION

Winkles, who is currently incarcerated at Johnson State Prison in Wrightsville, Georgia, has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) Respondent has filed an answer opposing the petition. (Doc. 8.) For the reasons that follow, the petition should be **DENIED**.

## I. BACKGROUND

On May 6, 2003, a Liberty County grand jury indicted Winkles on one count of child molestation and two counts of

aggravated child molestation. (Doc. 1 at 1.) Winkles entered an "Alford plea"[1] to the count of child molestation, and the two counts of aggravated child molestation were dismissed. (Id. at 1-2; Doc. 8 Br. at 1.) On June 21, 2004, the Liberty County Superior Court sentenced Winkles to a twenty-year "split" sentence, with ten years to serve in prison and the remainder to serve on probation. (Doc. 1 at 1; Doc. 8 Br. at 1.) Winkles filed a motion to withdraw the guilty plea, which the state trial court denied. Winkles v. Georgia, 620 S.E.2d 594, 595 (Ga. Ct. App. 2005). The Georgia Court of Appeals affirmed the trial court's decision. Id. at 596.

On August 11, 2006, Winkles filed a state habeas corpus petition in the Johnson County Superior Court. (Resp't's Ex. 1.) The state habeas court held a hearing on the matter and subsequently denied Winkles' petition. (Resp't's Ex. 3.) The Georgia Supreme Court denied Winkles' application for a certificate

---

[1] North Carolina v. Alford, 400 U.S. 25, 36 (1970) ("the Constitution does not bar imposition of a prison sentence upon an accused who is unwilling to expressly admit his guilt but who, faced with grim alternatives, is willing to waive his trial and accept [a] sentence").

2

of probable cause to appeal that decision on October 29, 2007. Winkels [sic] v. Georgia, 2006 Ga. LEXIS 35, at *1 (Jan. 17, 2006).[2]

Winkles filed the present federal habeas corpus petition pursuant to 28 U.S.C. § 2254 on May 6, 2008, contending that:

(1) his trial counsel was ineffective;

(2) the trial court erred by denying his motion to withdraw his Alford plea;

(3) the trial court erred by failing to inform him on the record of the presumption of innocence, as required by the Uniform Superior Court Rules; and

(4) the trial court erred by failing to inform him of the consequences of Georgia's First Offender Act.

(Doc. 1 at 5-11; id., Attachs. 1-3.)[3]

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") placed "a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in

---

[2] It appears that the Supreme Court of Georgia misspelled petitioner's name.

[3] Rather than submitting the factual bases for his claims on the federal petition, Winkles refers to attachments that he submitted, including his state habeas petition. (Doc. 1 at 5-11; id., Attachs. 1-3.)

3

state court." Williams v. Taylor, 529 U.S. 362, 412 (2000). AEDPA was intended "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002); see Peterka v. McNeil, 532 F.3d 1199, 1200-01 (11th Cir. 2008) (under AEDPA a federal court's review of a state court ruling is "'greatly circumscribed and highly deferential to the state courts'") (citation omitted); Trotter v. Sec'y, Dep't of Corr., 535 F.3d 1286, 1290 (11th Cir. 2008) (AEDPA limits a federal court's review of a state court's decisions "'and establishes a general framework of substantial deference for reviewing every issue that the state courts have decided.'") (citations omitted). These new restrictions on federal habeas review are set forth in 28 U.S.C. § 2254(d), which provides that a federal court may grant a writ of habeas corpus for a claim adjudicated on the merits in state court only if the state court adjudication

> (1) resulted in a decision that was contrary to, or involved in unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

4

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meaning and furnish separate bases for reviewing a state court's decisions. Bell, 535 U.S. at 694; Williams, 529 U.S. at 404-05; Putnam v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court decision is "contrary to" clearly established federal law[4] if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court on a set of materially indistinguishable facts. Williams, 529 U.S. at 405-06, 412-13. A state court decision involves an unreasonable application

---

[4] The statutory reference to "clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. A federal habeas court may not look to "the case law of the lower federal courts" in determining what federal law is "clearly established." Putnam, 268 F.3d at 1241. This is a retrenchment from former practice, which allowed the federal courts of appeals to rely on their own jurisprudence in addition to that of the Supreme Court when conducting habeas review of a state court judgment. Lindh v. Murphy, 96 F.3d 856, 869 (7th Cir. 1996) (en banc), rev'd on other grounds, 519 U.S. 1074 (1997).

5

of clearly established federal law where that decision correctly identifies the governing legal rule from the Supreme Court's cases but applies it unreasonably to the facts of the particular prisoner's case. Id. at 407-08, 413. "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Instead, the appropriate inquiry is whether the state court's application of Supreme Court precedent was "objectively unreasonable." Id. at 409; Bell, 535 U.S. at 694; Parker v. Head, 244 F.3d 831, 835 (11th Cir. 2001).

A state court's factual findings "shall be presumed to be correct" unless rebutted by the petitioner "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The statutory presumption of correctness applies to findings of fact made by both state trial and appellate courts. Dill v. Allen, 488 F.3d 1344, 1354 (11th Cir. 2007). This deference to state court fact findings, however, does not apply to mixed determinations of law and fact. Parker, 244

F.3d at 836. With these considerations in mind, the Court will now turn to Winkles' asserted grounds for relief.

## III. ANALYSIS

### A. Ineffective Assistance of Counsel

Winkles contends that his trial counsel, Richard Darden, was ineffective. (Doc. 1 at 5.) The state habeas court addressed this ground for relief and found it to be without merit. (Resp't's Ex. 4.)

As noted above, this Court must review the state habeas court's determination through the lens of clearly established federal law. The clearly established federal law applicable to this claim—where petitioner pled guilty—arises from Hill v. Lockhart, 474 U.S. 52 (1985), which applied a slightly modified version of the ineffectiveness test announced in Strickland v. Washington, 466 U.S. 668 (1984). Where a petitioner entered a plea of guilty, he must first demonstrate that his attorney's performance was deficient, which requires a showing that counsel's advice regarding the plea was outside the "range of competence demanded of attorneys in criminal cases." Hill, 474 U.S. at 56 (quoting McMann

v. Richardson, 397 U.S. 759, 771 (1970)); see Tollett v. Henderson, 411 U.S. 258, 267 (1973) (in the guilty plea context the petitioner may not attack any constitutional errors that occurred prior to the plea; instead he may only attack the plea itself by showing that the advice he received from counsel undermined "the voluntary and intelligent character of the plea"). Second, petitioner must demonstrate that the defective performance prejudiced the plea process to such a degree that the plea cannot be trusted. Hill, 474 U.S. at 59.

Under the performance prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. Strickland, 466 U.S. at 690. The petitioner carries a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689.

Under the prejudice prong, petitioner must establish "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59-60. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; see also Lightbourne v. Dugger, 829 F.2d 1012, 1022 (11th Cir. 1987); Boykins v. Wainwright, 737 F.2d 1539, 1542 (11th Cir. 1983).

Winkles' present contentions mirror those he raised before the state habeas court. (Doc. 1 at 5; id., Attach. 1.) He contends that Darden was biased against him and was therefore ineffective. The alleged bias springs from the fact that Darden was a father. Since Darden had fathered children of his own, Winkles believes that he took the allegation of child molestation as true and actively worked against Winkles' interests. (Doc. 1 at 5.) Winkles supports this allegation by averring that his decision to take the Alford plea was made "under duress," because Darden relentlessly asserted that conviction was inevitable and that the judge would set the sentence to the "fullest extent of the law." (Id., Attach. 1.)

9

Additionally, Darden allegedly promised that Winkles faced a probated 15-year sentence that could be overturned on appeal if he pled guilty, and Darden allegedly applied this extreme pressure while Winkles was depressed and fatigued. (Id.)

Darden presented an entirely different account of the attorney-client relationship. At the state habeas hearing, Darden testified that he discussed the charges and evidence with petitioner, developed a theory of defense, and was prepared for trial.[5] (Habeas Hr'g Tr. 23.) In addition to this preparatory work, Darden advised Winkles that he could negotiate a plea, enter an Alford plea, or proceed to trial, and he explained the mechanics of each option. (Id. at 22-25.) Darden stated that he made it clear that the final decision on how to proceed rested with Winkles. (Id. at 35.) Darden testified that he advised Winkles of the sentencing exposure he faced and of the constitutional rights he would waive by pleading guilty. (Id. at 25.) Specifically, Darden advised

---

[5] The state court found that Darden met with Winkles five or six times in person, communicated with him by telephone, and filed a motion for discovery. (Reps't's Ex. 4 at 2-3.) Darden met with Winkles' ex-wife, who had made a statement to police implicating herself and Winkles in the molestation. (Id. at 3.) He also spoke with Chris Rice, the Director of the Coastal Behavioral Center. (Id.)

10

Winkles that he was facing up to 80 years in prison if he elected to go to trial and only 20 if he entered an Alford plea, as the state had agreed to strike the two charges of aggravated child molestation. (Id.) After weighing the risks and uncertainties of the trial that was about to commence against the specific terms of the plea agreement offered by the state, Winkles took the second option. (Id. at 24.) Darden acknowledged that he was aware that Winkles was on medication, but he did not believe that the medication affected Winkles' ability to make decisions.[6] (Id. at 26.) Finally, Darden testified that having children did not create any "conflict of interest" in his representation, and he indicated that he did not tell Winkles of his children because he generally does not discuss his family life with his clients. (Id. at 27-28.)

The state habeas court credited Darden's testimony and found that his advice regarding the plea was competent and effective.[7] (Resp't's Ex. 3 at 5-6.) It supported its holding by

---

[6] At sentencing, Winkles stated that he was prescribed Wellbutrin for depression and acknowledged that it did not affect his ability to make decisions. (Sent. Tr. 11-12.)

[7] As noted above, a state court's factual findings "shall be presumed to be correct" unless rebutted by the petitioner "by clear and convincing

noting that Winkles admitted at sentencing that he understood the mechanics of an Alford plea and that nobody forced him to plead guilty. (Sent. Tr. 15, 19-20). As noted above, if counsel's advice regarding a plea is competent, that ends the ineffective assistance inquiry. McMann, 397 U.S. at 770 ("In our view a defendant's plea of guilty on reasonably competent advice is an intelligent plea. . . ."). This Court cannot say that the state habeas court acted in an "objectively unreasonable" manner in finding that counsel's advice was competent and therefore effective.[8] Williams, 529 U.S. at 409. Consequently this ground for relief should be denied.

---

evidence." 28 U.S.C. § 2254(e)(1). Here, Winkles has not provided any evidence rebutting the state court's findings, so this Court must defer to those findings.

[8] Winkles also states that Darden was ineffective for failing to present the court with any mitigating evidence and failing to uncover or present any evidence regarding his innocence of the crime. (Doc. 1 Attach. 1.) As Winkles plead guilty, there was simply no need for Darden to present any evidence of innocence; the guilty plea waived any such defense. In addition, Winkles himself made it very clear that he believed he was innocent of the crimes charged, so he cannot show that he was prejudiced from any such omission. (Sent. Tr. 16.)

As to the failure to present mitigating evidence, Darden testified that he did not introduce any such evidence at sentencing because the district attorney intended to introduce a prior conviction for domestic abuse if Winkles presented any character evidence. (Habeas Tr. at 31.) Winkles admitted that he was aware of that domestic abuse conviction during the state habeas hearing. (Id.) Although the state habeas court did not directly address this claim, the Court is of the opinion that Darden made a sound tactical decision

## B.  Remaining Grounds

All three of the remaining grounds for relief revolve around Winkles' plea hearing.  In grounds three and four, Winkles avers that the trial court erred by failing to inform him of the presumption of innocence, as required by Uniform Superior Court Rule 33.8(b)(2), and by failing to inform him of the consequences of Georgia's First Offender Act.  (Doc. 1 at 8-11; Doc. 1 Attach. 1-3.) The Georgia Court of Appeals addressed and denied grounds three and four because the record as a whole showed that Winkles' plea was knowing and voluntary.  Winkles, 620 S.E.2d at 596.  By implication, it found that these procedural errors were de minimis.

In ground two, Winkles contends that the trial court erred by denying his motion to withdraw his guilty plea. (Doc. 1 at 6.)  His argument is far from a model of clarity, but it appears to progress as follows:  At the plea hearing, the trial judge told Winkles that he could not withdraw his plea after it was entered. (Doc. 1 at 8; Doc. 1 Attach. 1.) Winkles contends that the trial court's advice violated O.C.G.A. § 17-7-93(b), which permits a defendant to withdraw a

---

not to present such evidence, and his decision was therefore protected under Strickland's performance prong.

plea of guilty at "any time before judgment is pronounced." (Doc. 1 at 8; Doc. 1 Attach. 1.) He believes that because of this error in taking his plea, the trial court should have granted his subsequent motion to withdraw his plea, which he filed after judgment was pronounced. (Doc. 1 Attach. 1.) The Georgia Court of Appeals denied this ground because it found that O.C.G.A. § 17-7-93(b) does not permit withdrawal of pleas for defendants sentenced as first offenders. Winkles, 620 S.E.2d at 595-96. Consequently, under state law, a plea is final when a defendant chooses to proceed under the First Offender Act.

Each of these grounds for relief involves the state court's application of state law. Notice of the waiver of the presumption of innocence is not constitutionally required at a plea hearing; such a right is wholly a creature of state law. Davis v. Curtis, 2005 WL 1712212, at *6 (W.D. Mich. July 21, 2005) ("this court is aware of no Supreme Court decision, and petitioner presents none, establishing a criminal defendant's federal constitutional right to be advised of the presumption of innocence before accepting a valid guilty plea"). Similarly, the Court is unaware of any Supreme

14

Court authority requiring a state trial court to address either of the remaining two grounds during a defendant's plea proceedings.[9] Under § 2254, federal courts may only decide whether a petitioner's conviction "violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991); Rose v. Hodges, 423 U.S. 19, 21 (1975). "A federal court may not issue the writ on the basis of a perceived error of state law." Pulley v. Harris, 465 U.S. 37, 41 (1984); Lewis v. Jeffers, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."). Section 2254 "was not enacted to enforce State-created rights." Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000); Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988); see Teague v. Lane, 489 U.S. 288, 310 (1989) (plurality opinion) (limiting ability of federal courts to create new constitutional rules on collateral review). As Winkles is asserting violations of state law in grounds two through four of his petition, this Court is not

---

[9] The Constitution only requires the record to show that a defendant's plea was informed, voluntary, and made with an understanding of the rights waived by the plea, including the privilege against self-incrimination, the right to trial by jury, and the right to confront one's accusers. Boykin v. Alabama, 395 U.S. 238, 243 (1969). Winkles does not allege that his plea was improper under Boykin.

empowered to address them in a § 2254 proceeding. They should therefore be denied.

## IV. CONCLUSION

For the foregoing reasons, Winkles' § 2254 petition should be **DENIED.**

**SO REPORTED AND RECOMMENDED** this 14th day of October, 2008.

/s/ G.R. SMITH
**UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA**